UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JODI CHURCHILL,
on behalf of Z.W.C., a minor,

                    Plaintiff,

v.                                                   1:15-CV-1186
                                                      (GTS)
CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                    Defendant.
_____

APPEARANCES:                                        OF COUNSEL:

OFFICE OF PETER M. MARGOLIUS            PETER M. MARGOLIUS, ESQ.
 Counsel for Plaintiff
7 Howard Street
Catskill, NY 12414OLINSKY LAW GROUP

U.S. SOCIAL SECURITY ADMIN.                KRISTINA D. COHN, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
 Counsel for Defendant
26 Federal Plaza, Room 3904
New York, NY 10278

GLENN T. SUDDABY, Chief United States District Judge

# DECISION and ORDER

Currently before the Court, in this Social Security action filed by Jodi Churchill, on behalf of her son, Z.W.C. ("Plaintiff"), against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-motions for judgment on the pleadings. (Dkt. Nos. 13, 14.) For the reasons set forth below, Plaintiff's motion for judgment on the pleadings is denied and Defendant's motion for judgment on the pleadings is granted.

I.     **RELEVANT BACKGROUND**

    A.     **Factual Background**

At the time of the hearing, Plaintiff was in the tenth grade. Generally, Plaintiff's alleged impairments are syringomyelia,[1] attention deficit hyperactivity disorder ("ADHD"), oppositional defiant disorder, sleep disorder, migraines, bowel and bladder incontinence, and reflux.

    B.     **Procedural History**

On June 8, 2012, Plaintiff's mother filed an application for Supplemental Security Income on behalf of Plaintiff, a minor. Plaintiff's application was initially denied on September 19, 2012, after which he timely requested a hearing before an Administrative Law Judge ("ALJ"). On November 27, 2013, Plaintiff and his mother appeared in a hearing before the ALJ, Carl E. Stephan. (T. 31-60.)[2] On February 11, 2014, the ALJ issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 9-30.) On July 30, 2015, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (T. 1-5.) Thereafter, Plaintiff timely sought judicial review in this Court.

    C.     **The ALJ's Decision**

Generally, in his decision, the ALJ made the following six findings of fact and conclusions of law. (T. 19-29.) First, the ALJ found that Plaintiff was an "adolescent" pursuant to 20 C.F.R. § 416.926a(g)(2) on June 8, 2012, the date that the application for benefits was filed. (T. 19.) Second, the ALJ found that Plaintiff had not engaged in substantial gainful activity since

---

[1]    Syringomyelia is the development of a fluid-filled cyst on the spinal cord that may enlarge over time, damaging the spinal cord and causing symptoms including pain, weakness, and stiffness. MAYO CLINIC, http://www.mayoclinic.org/diseases-conditions/syringomyelia/home/ovc-20267736 (last visited Jan. 20, 2017).

[2]    Page citations refer to the page numbers used on CM/ECF rather than the page numbers contained in the parties' respective motion papers.

the application date. (*Id.*) Third, the ALJ found that Plaintiff's ADHD, hydromyelia (syringomyelia), and headaches were severe impairments. (T. 19.) Fourth, the ALJ found that Plaintiff does not have an impairment, or combination of impairments, that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"). (T. 19.) The ALJ considered Listings 112.11 and 111.00. (*Id.*) Fifth, the ALJ found that Plaintiff does not have an impairment, or combination of impairments, that functionally equals the severity of the Listings. (T. 19-29.) Sixth, and finally, the ALJ found that Plaintiff has not been disabled, as defined by the Social Security Act, since June 8, 2012, the date his application was filed. (T. 29.)

### D. The Parties' Briefings on Their Cross-Motions

Plaintiff makes two arguments in support of his motion for judgment on the pleadings. First, Plaintiff argues that the ALJ's determination that Plaintiff has "less than marked" limitation in the domain of attending and completing tasks is not supported by substantial evidence. (Dkt. No. 13, at 1-4 [Pl.'s Mem. of Law].) Second, Plaintiff argues that the ALJ's determination that Plaintiff has "less than marked" limitation in the domain of health and physical well-being is not supported by substantial evidence. (*Id.*, at 4-5.)

Defendant makes two arguments in support of her motion for judgment on the pleadings. First, Defendant argues that substantial evidence supports the ALJ's determination that Plaintiff has "less than marked" limitation in his ability to attend to and complete tasks. (Dkt. No. 14, at 6-10 [Def.'s Mem. of Law].) Second, Defendant argues that substantial evidence supports the ALJ's finding that Plaintiff has "less than marked" limitation in his health and physical well-being. (*Id.* at 8-13.)

## II. RELEVANT LEGAL STANDARD

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. 42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord, Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153

(S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

An individual under the age of 18 is disabled, and thus eligible for Social Security Income benefits, if he or she has a medically determinable physical or mental impairment, which results in "marked" and "severe" functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(C)(i). However, that definitional provision excludes from coverage any "individual under the age of 18 who engages in substantial gainful activity . . . ." 42 U.S.C. § 1382c(a)(3)(C)(ii).

By regulation, the agency has prescribed a three-step evaluative process to determine whether a child can meet the statutory definition of disability. 20 C.F.R. § 416.924; *Kittles v. Barnhart*, 245 F. Supp. 2d 479, 487-88 (E.D.N.Y. 2003); *Ramos v. Barnhart*, 02-CV-3127, 2003 WL 21032012, at *7 (S.D.N.Y. May 6, 2003). The first step of the test, which bears some similarity to the five-step analysis employed in adult disability cases, requires determining whether the child has engaged in substantial gainful activity. 20 C.F.R. § 416.924(b); *Kittles*, 245 F. Supp. 2d at 488. If so, then the child is ineligible for Social Security Income benefits. 42 U.S.C. § 1382c(a)(3)(C)(ii); 20 C.F.R. § 416.924(b).

If the child has not engaged in substantial gainful activity, the second step of the test requires examining whether the child suffers from one or more medically determinable impairments that, either singly or in combination, are properly regarded as "severe" because they cause more than minimal functional limitation. 20 C.F.R. § 416.924(c); *Kittles*, 245 F. Supp. 2d

at 488; *Ramos*, 2003 WL 21032012, at *7. In essence, a child is disabled under the Social Security Act "if his impairment is as severe as one that would prevent an adult from working." *Sullivan v. Zebley*, 493 U.S. 521, 529, 110 S. Ct. 885, 890 (1990).

If a "severe" impairment exists, the third step requires determining whether the child's impairment(s) meet or medically equal the severity of a presumptively disabling condition identified in the listings set forth under 20 C.F.R. Pt. 404, Subpt. P., App. 1. (the "Listings"). 20 C.F.R. § 416.924(d); *Zebley,* 493 U.S. at 526. Equivalence to a Listing can be either medical or functional. 20 C.F.R. § 416.924(d); *Kittles*, 245 F. Supp. 2d at 488; *Ramos*, 2003 WL 21032012, at *7. If an impairment is found to meet, or qualify as medically or functionally equivalent to, a Listing and the 12-month durational requirement is satisfied, the claimant will be deemed disabled. 20 C.F.R. § 416.924(d)(1); *Ramos*, 2003 WL 21032012, at *8.

Analysis of functionality considers how a claimant functions in six main areas referred to as "domains." 20 C.F.R. § 416.926a(b)(1); *Ramos*, 2003 WL 21032012, at *8. The domains are described as "broad areas of functioning intended to capture all of what a child can or cannot do." 20 C.F.R. § 416.926a(b)(1). Those domains include the following: (i) acquiring and using information; (ii) attending and completing tasks; (iii) interacting and relating with others; (iv) moving about and manipulating objects; (v) caring for oneself; and (vi) health and physical well-being. 20 C.F.R. § 416.926a(b)(1). Functional equivalence is established if the child is determined to have an "extreme," or "more than marked," limitation in a single domain. 20 C.F.R. § 416.926a(a); *Ramos*, 2003 WL 21032012, at *8. An extreme limitation is an impairment that "interferes very seriously with [a claimant's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3)(i).

Alternatively, a finding of disability is warranted if a "marked" limitation is found in any two of the listed domains. 20 C.F.R. § 416.926a(a); *Ramos*, 2003 WL 21032012, at *8. A marked limitation exists when the impairment "interferes seriously with [a claimant's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). A marked limitation "may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with the ability to function (based upon age-appropriate expectations) independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.00(C).

## III. ANALYSIS

For the ease of analysis, Plaintiff's arguments will be reorganized and consolidated below.

### A. Whether Substantial Evidence Supports the ALJ's Determination that Plaintiff's Impairments Do Not Functionally Equal the Listings

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 14, at 6-13 [Def.'s Mem. of Law].) To those reasons, the Court adds the following analysis.

#### i. Attending and Completing Tasks

In assessing a child's functioning in the domain of attending and completing tasks, the ALJ considers how well a child is able to focus and maintain his attention, and how well he begins, carries through, and finishes activities, including the pace at which he performs activities and the ease with which he changes them. 20 C.F.R. § 416.926a(h); SSR 09-4p. Attending and completing tasks also refers to a child's ability to avoid impulsive thinking and his ability to prioritize completing tasks and manage his time. 20 C.F.R. § 416.926a(h); SSR 09-4p.

The regulations provide that an adolescent (a child age 12 to attainment of age 18), in later years of school, should be able to pay attention to increasingly longer presentations and discussions, maintain concentration while reading textbooks, and independently plan and complete long-range academic projects. 20 C.F.R. § 416.926a(h)(2)(v). The child should be able to organize his materials and to plan his time in order to complete school tasks and assignments. *Id.* In anticipation of entering the workplace, he should be able to maintain his attention on a task for extended periods of time, and not be unduly distracted by his peers or unduly distracting to them in a school or work setting. *Id.*

Some examples of limited functioning in this domain are when a child: (i) is easily startled, distracted, or over-reactive to sounds, sights, movements, or touch; (ii) is slow to focus on, or fails to complete, activities of interest (e.g., games or art projects); (iii) repeatedly becomes side-tracked from activities or frequently interrupts others; (iv) is easily frustrated and gives up on tasks, including ones he is capable of completing; or (v) requires extra supervision to remain engaged in an activity. 20 C.F.R. § 416.926a(h)(3). These examples do not apply to a particular age group, but cover a range of ages and developmental periods. *Id.* Additionally, the examples do not necessarily describe a "marked" or "extreme" limitation in the domain. *Id.*

Here, the ALJ determined that Plaintiff has "less than marked" limitation in the domain of attending and completing tasks. (T. 25.) The ALJ noted that consultative mental examiner Leslie Helprin, Ph.D., observed that Plaintiff exhibited intact attention and concentration, and Plaintiff's doctors reported that he had improved attention with medication. (T. 22, 25.) Moreover, Dr. Helprin opined that Plaintiff was able to attend to, follow, and understand age-appropriate directions and complete age-appropriate tasks. (T. 452.) The ALJ noted that, though

the Plaintiff has a 504 accommodation plan with his school district,[3] he still remained on the honor roll, which suggests that he can maintain attention and concentration. (T. 25.)

Additionally, elsewhere in the decision, the ALJ noted that consultative physical examiner Mark Johnston, M.D., observed that Plaintiff had a normal attention span for his age. (T. 22.) Dr. Johnston further noted that, while Plaintiff requires frequent reminders to sit still during class, he had avoided disciplinary treatment or detention. (T. 445.) Additionally, the ALJ noted that State agency consultants, D. Bostic, M.D., and J. Dambrocia, Ph.D., opined that Plaintiff has "less than marked" limitation in the domain of attending and completing tasks. (T. 23.) In sum, the ALJ concluded that Plaintiff has a limitation in the domain of attention and concentration, but his limitation does not "seriously interfere" with Plaintiff's functioning in the activities relevant to this area and therefore, a "less than marked" rating is appropriate. (*Id.*)

Plaintiff argues that the ALJ incorrectly stated that Plaintiff remained on the honor roll. (Dkt. No. 13, at 3 [Pl.'s Mem. of Law].) In support of his argument, Plaintiff cited specific evidence from April and May of 2011 indicating that Plaintiff had gone from the high honor roll to the merit roll. (*Id.*) Notably, this evidence predated Plaintiff's June 8, 2012, application and therefore, was before Plaintiff's period of eligibility for benefits under the regulations. 20 C.F.R. § 416.330, 416.335. Moreover, in August 2012, Dr. Johnston noted that Plaintiff made the high honor roll for the previous two quarters despite missing about 15 days of school during the previous year, and earned grades of 94 Technology, 99 in Spanish, 90 in English and Social Studies, 89 in Math, and 86 in Science. (T. 449.) Additionally, both Plaintiff and his mother testified that Plaintiff was on the honor roll as of the hearing on November 27, 2013. (T. 43, 60.)

---

[3] The ALJ noted that Plaintiff's Section 504 plan provided that he cannot engage in lifting and carrying, requires additional books, needs visual cues, requires extra leeway with completion dates, needs movement breaks, and is allowed extra breaks to complete tests and other class work. (T. 21.)

In any event, the ALJ properly considered the evidence cited by Plaintiff and reasonably found that Plaintiff's ability to make the honor roll suggests that he can maintain attention and concentration. (T. 25.) Moreover, the ALJ's conclusion that Plaintiff has "less than marked" limitation in the domain of attending and completing tasks is supported by substantial evidence, including the opinions of consultative examiner Dr. Helprin and State agency medical consultants Dr. Bostic and Dr. Dambrocia discussed above.

### ii. Health and Physical Well-Being

This domain considers the cumulative physical effects of a child's physical and mental impairments and associated treatments or therapies on the child's functioning that were not considered in the evaluation of the child's ability to move about and manipulate objects. 20 C.F.R. § 416.926a(l), SSR 09-4p. In addition, this domain considers that the medications a child takes (e.g., for asthma or depression) or treatments a child receives (e.g. chemotherapy or multiple surgeries) may have physical effects that limit the child's performance of activities. C.F.R. § 416.926a(2), SSR 09-4p.

A child's physical or mental disorder may have physical effects that vary in kind and intensity, and may make it difficult for the child to perform his activities independently or effectively. 20 C.F.R. § 416.926a(l)(1). Such effects may include generalized weakness, dizziness, shortness of breath, reduced stamina, fatigue, psychomotor retardation, allergic reactions, recurrent infection, poor growth, bladder or bowel incontinence, or local or generalized pain. *Id.* Examples of limitations in this domain include (i) generalized symptoms, such as weakness, dizziness, agitation, lethargy, or psychomotor retardation because of impairment(s), (ii) somatic complaints relating to impairment(s) (e.g., seizure or convulsive activity, headaches, incontinence, recurrent infections, allergies, changes in weight or eating

10

habits, stomach discomfort, nausea, or insomnia), (iii) limitations in physical functioning because of treatment (e.g., chemotherapy, multiple surgeries, chelation, pulmonary cleansing, or nebulizer treatments), (iv) exacerbations from one impairment or a combination of impairments that interfere with physical functioning, or (v) being medically fragile and needing intensive medical care to maintain health and physical well-being.  20 C.F.R. § 416.926a(l)(4).

In the domain and physical well-being, a "marked" limitation will be found "if the child's impairments cause episodes of illness or exacerbations that result in significant, documented symptoms that occur on a regular basis."  *Hamdallah ex rel. E.B. v. Astrue*, 876 F. Supp. 2d 133, 151 (N.D.N.Y. June 25, 2012) (citing *Surita ex rel. Cifuentes v. Astrue*, 2008 WL 4998426, at *4 (S.D.N.Y. 2008); *accord,* 20 C.F.R. § 416.926a(e)(2)(iv) (stating that a "marked" limitation in health and physical well being may be found if the child is frequently ill because of his impairment(s) that result in "significant, documented, symptoms or signs").[4]

Here, the ALJ determined that Plaintiff has a limitation in the domain of health and physical well being, but his limitation does not "seriously interfere" with his functioning in the activities relevant to this area and therefore, a "less than marked" rating is appropriate.  (T. 28-29.)  The ALJ reasoned that, though Plaintiff has a history of syringomyelia, with headaches and possible loss of sensation, he did not seek "recurrent treatment" throughout the period at issue.  (T. 28.)  The ALJ stated that, instead, Plaintiff "maintained routine office visits and he has been stable on medication."  (*Id.*)

Plaintiff objects to the ALJ's statement that Plaintiff had not sought "recurrent treatment"

---

[4] For purposes of this domain, "frequent" means that a child has episodes of illness that occur on an average of three times a year, each lasting two weeks or more.  20 C.F.R. § 416.926a(e)(2)(iv).  A marked limitation may also be found if a child has episodes that (1) occur more often than three times in a year, but do not last for two weeks, or (2) occur less often than an average of three times a year, but last longer than two weeks "if the overall effect (based on the length of the episode(s) or its frequency) is equivalent in severity."  *Id.*

11

because Plaintiff sought treatment with a variety of medical providers throughout the period at issue and was prescribed multiple medications. (Dkt. No. 13, at 4 [Pl.'s Mem. of Law].) Plaintiff's point is well taken. Notwithstanding, elsewhere in his decision the ALJ stated that Plaintiff's "history of continued treatment for ADHD and syringomyelia" support limitation in the domains, but noted that Plaintiff's symptoms had improved with treatment. (T. 23.) Additionally, the ALJ's decision thoroughly and accurately summarized Plaintiff's reported symptoms and treatment history during the relevant period. (T. 20-29.)

Plaintiff further argues that he has significant physical limitations as a result of syringomyelia that are documented in the record. (Dkt. No. 13, at 4 [Pl.'s Mem. of Law].) For example, Plaintiff cites his school district's Section 504 accommodation plan which indicates that Plaintiff has "severe limitations with any type of physical lifting, carrying, or participation in physical education." (*Id.*, at 4-5.) Additionally, Plaintiff cites Dr. Bostic's opinion that Plaintiff has "marked" limitation in the domain of health and physical well-being. (*Id.*) Finally, Plaintiff cites a function report from his mother (which he argues demonstrates his significant physical limitations), and various examination and treatment notes regarding his migraine headaches (which he argues improved, but were not resolved). (*Id.*, at 4-5.)

First, a review of the ALJ's complete decision indicates that the ALJ considered all of the evidence that Plaintiff cited in support of his argument, except one treatment note that predated the relevant time period. (T. 19-29.) Second, even if the ALJ erred in finding that Plaintiff had "less than marked" limitation in the domain of health and well being, remand would not be required on this basis alone. Remand for an error is not required when correction of the error would only lead to the same conclusion. *Zabala v. Astrue,* 595 F.3d 402, 409 (2d Cir. 2010); *Lamorey v. Barnhard,* 158 F. App'x 361, 363 (2d Cir. 2006). Assuming *arguendo* that Plaintiff has "marked" limitation in the domain of health and well being, "marked" limitation in one

domain only would not result in a finding of disability.[5] 20 C.F.R. § 416.926a(a); *Ramos*, 2003 WL 21032012, at *8. As discussed in Part III.A.i. of this Decision and Order, substantial evidence supports the ALJ's determination that Plaintiff has "less than marked" limitation in the domain of attending and completing tasks. Moreover, the ALJ's determination that Plaintiff has "less than marked" limitation in the remaining domains is undisputed. (T. 24-29.) Therefore, remand is not necessary on this basis.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 13) is **DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 14) is **GRANTED**; and it is further

**ORDERED** that Defendant's decision denying disability benefits is **AFFIRMED**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

Dated: January 27, 2017
Syracuse, New York

Hon. Glenn T. Suddaby
Chief U.S. District Judge

---

[5] Plaintiff expressly argues that he has a "marked" limitation in the domain of health and physical well being. (Dkt. No. 13, at 5 [Pl.'s Mem. of Law].) Plaintiff does not appear to argue that he has "extreme" limitation in any domain, and a review of the record evidence does not support such a finding.